# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Council on American-Islamic Relations-Minnesota and League of Women Voters of Minnesota,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Atlas Aegis, LLC, Anthony Caudle, John Does #1-10,<br><br>　　　　　　Defendants. | Court File No.: 20-CV-02195(NEB/BRT)<br><br>**DEFENDANTS ATLAS AEGIS, LLC AND ANTHONY CAUDLE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |

Defendants Atlas Aegis, LLC ("Atlas") and Anthony Caudle ("Caudle") (together referenced as "Subject Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for a temporary restraining order and limited expedited discovery. With recent action by the Attorney General for the state of Minnesota, Plaintiffs have achieved their goals and received their requested remedies. In fact, Plaintiffs already exclaimed victory in this case in a press release issued on Friday. The challenged conduct at the center of Plaintiffs' complaint and motion for temporary restraining order has ceased, making the motion moot. Further, Plaintiffs are not entitled to a temporary restraining order, because Plaintiffs no longer have an immediate threat of harm and will not likely succeed on their claim's merits due to mootness.

I. **BACKGROUND**

This case is moot. Plaintiffs have already received the remedy they request here. Subject Defendants are already enjoined by virtue of the Assurance of Discontinuance (the "Assurance") filed on October 23, 2020.[1]

**A. Background Leading to the Assurance**.

Defendant Atlas received word from two industry contacts that a Minnesota security company sought additional security guards to potentially provide private security at private properties of Minnesota corporations and individuals around the date of the general election. (Declaration of Terrance W. Moore ("Moore Dec."), Ex. 1, ¶¶ 2-4.) The two industry contacts, 5326 Consultants (a Florida corporation) and 10-Code indicated that the scope of work entailed private security at private properties – neither indicated the scope of work would encompass polling places. (*Id.*, ¶4.)

Atlas was interested in providing personnel for the Minnesota security company and solicited individuals in its network. (*Id.*, ¶ 5.) In doing so, Atlas advertised a scope of work that included security "to protect election polls." (*Id.*) Neither the Minnesota security company, nor 5326 Consultants, nor 10-Code, told Atlas the work would include "protecting election polls." (*Id.*)

A national news outlet found and published a news article regarding Atlas's advertisement for the security positions. (*Id.*, ¶ 6.) Caudle was contacted and quoted in the

---

[1] The Petition for Order Approving Assurance of Discontinuance was filed with Ramsey County District Court on Friday, October 22, 2020. The parties expect the district court will sign the order.

article saying the security would be to ensure the election sites would not be destroyed by "antifas" and that Minnesota election officials as well as law enforcement in the state were aware armed civilians intended to guard the polling places. (*Id*. ¶6.)

Subject Defendants acknowledge Caudle's statements to news outlets were incorrect, and Atlas added the language to the subject job posting regarding election polls at its own accord. (*Id*., ¶ 5, 8.). Atlas did not intend to intimidate, coerce, or threaten Minnesota voters, poll workers, or others aiding or urging Minnesota voters to vote or make Minnesotans less willing to vote. (*Id*., ¶ 8.) Caudle and Atlas misunderstood the potential scope of work, which did not include any security at or near polling places or "election sites," nor was Minnesota law enforcement aware that armed civilians intended to guard polling sites. (*Id*., ¶ 7.)

Neither Atlas nor any of its officers or employees have been engaged to perform work in Minnesota in November (*Id*., ¶ 9.) In addition, no officers or employees or contractors of Atlas will be present in Minnesota in November and they will certainly not be acting as "security" at polling places or election sites. (*Id*., ¶ 10.) Atlas is also not aware of any other individuals or groups planning to provide private "security" at polling places or election sites in Minnesota in connection with the upcoming election. (*Id*., ¶ 11.) Subject Defendants do not know of any party who match the descriptions of John Does Defendants #1-10 as described in Plaintiffs' complaint, except those named in the Assurance. (Declaration of Anthony Caudle, ("Caudle Dec."), ¶ 3.)

**B. Minnesota Attorney General and Subject Defendants' Assurance of Discontinuance.**

On October 22, 2020, the Subject Defendants agreed to an Assurance with the Minnesota Attorney General's office, including, *inter alia,* that neither Atlas Aegis as a company nor any of its officers or employees will not be engaged to perform work in Minnesota in November, will not be present in Minnesota in November and "certainly will not be acting as 'security' at polling places or election sites. (*Id.*, ¶¶ 9-10.)

Subject Defendants are already enjoined from the conduct Plaintiffs seek to prohibit. Under the Assurance, the following injunctive relief currently governs the Subject Defendants:

1. Atlas shall not provide any protective agent services, as defined in Minnesota Statutes section 326.338, in Minnesota from October 22, 2020 through January 1, 2022;

2. Atlas will not seek to intimidate voters, in Minnesota or elsewhere, in connection with the election.

3. Atlas shall communicate to each and every listserv, job board, individual etc. that it originally sent its request for election guards in Minnesota, informing them that: Atlas was wrong to suggest the scope of work included "protection of election polls."

4. Atlas shall provide any remaining documents and information it owes the Attorney General pursuant to the CID and subsequent agreements of counsel by October 26.

Atlas and its officers are bound by the terms of the Assurance and intend to fully comply with its requirements. (Caudle Dec., ¶ 2.)

Minnesota Attorney General Keith Ellison released a press statement stating,

> I'm holding Atlas Aegis to account for their misstatements about recruiting security for polling places in Minnesota that potentially frightened Minnesota voters. They won't be doing it again and will not be anywhere in Minnesota before, during, or after Election Day.

(Moore Dec., Ex. 2.)

The Minnesota Attorney General's press release was broadcast across numerous news reports in Minnesota and around the country.[2] Even Plaintiffs acknowledged the Assurance as their victory in relation to the relief they seek in this lawsuit in a press release, titled, "Voting Rights Organizations Celebrate Important Victory in Case to Stop Illegal Voter Intimidation in Minnesota,"

> The Council on American-Islamic Relations of Minnesota (CAIR-MN) and the League of Women Voters of Minnesota today celebrated a major victory in their federal lawsuit against a private mercenary contractor, Atlas Aegis, for voter intimidation in Minnesota.
>
> \*\*\*
>
> League of Women Voters of Minnesota executive director Michelle Witte added, "Minnesota voters can rest easy tonight knowing that their polling places will remain free of sinister voter intimidation. We are grateful to the Minnesota Attorney General for negotiating an agreement that prevents the unlawful and threatening occupation of polling locations. New citizens and other voters of color have the right to peaceful, unimpeded access to the

---

[2] Derek Hawkins, *Security company that sought ex-Special Forces to guard Minnesota polls agrees to stay out of state, AG says*, the Washington Post (October 25, 2020, 8:45pm) https://www.washingtonpost.com/politics/2020/10/24/security-company-that-sought-special-forces-guard-minnesota-polls-agrees-stay-out-state-ag-says/; *AG Ellison: Atlas Aegis won't recruit or provide security in Minnesota Around election day*, CBS Minnesota (Oct. 25, 2020 at 8:42pm) https://minnesota.cbslocal.com/2020/10/23/ag-ellison-atlas-aegis-wont-recruit-or-provide-security-in-minnesota-around-election-day/; Charlie Wiese, *AG Ellison granted written assurance the Tennessee company will not provide private security a Minnesota polling places*, KSTP.com (Oct. 25, 2020 at 8:40pm), https://kstp.com/news/ag-ellison-granted-written-assurance-that-company-will-not-provide-private-security-at-minnesota-polling-places-/5903944/; Howard Thompson, *Attorney general: Security company agrees to not hire armed guards to patrol Minnesota polling sites*, FOX9-KMSP (Oct. 25, 2020 at 8:51pm) https://www.fox9.com/news/attorney-general-security-company-recruited-armed-guards-to-patrol-polls-has-agreed-to-stop.

ballot, and the League will continue to stand up for these voters against any and all attacks on their safety and constitutional right to vote."

(Moore Dec., Ex. 3.)

### C. Plaintiffs' Complaint and Motion against John Doe Defendants.

Plaintiffs brought suit against Subject Defendants along with John Doe Defendants #1-10. Plaintiffs describe John Doe #1 as "an unknown security firm partnering with Atlas in efforts to deploy armed former military personnel to polling places in Minnesota and described by Atlas as 'a locally licensed firm.'" (Doc. 1, ¶12.) Plaintiffs identified John Doe Defendants #2-10 as "members of 'consortium of business owners and concerned citizens' described by Caudle as the clients who hired John Doe 1 and Atlas to send armed former soldiers to Minnesota polling locations." (Doc. 1, ¶13.) The John Doe Defendants have not appeared in this action.

### II. LEGAL ARGUMENT.

#### A. Plaintiffs' Motion for Injunctive Relief is Moot.

In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." *Mo. Pro. and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007). A more stringent standard of mootness may apply when the defendant voluntarily ceases the challenged practice. *Id*. This standard will not apply where, as here "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quotation omitted). When the challenged conduct has ceased, there is no longer any live case or controversy for this court

to adjudicate, and a plaintiff's claim becomes moot. *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), 2020 WL 6121270, at *10 (D. Minn. Aug. 21, 2020), report and recommendation adopted sub nom. *Biron v. Carvajal*, No. 19-CV-2938-SRN-LIB, 2020 WL 5812970 (D. Minn. Sept. 30, 2020) *citing*, *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 869–70 (8th Cir. 2000); *In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1310 (8th Cir. 1996).

Subject Defendants already ceased the challenged conduct that is the center of Plaintiffs' motion for TRO. They are enjoined from doing anything that could be potentially viewed as being voter intimidation and prohibited from being in Minnesota until 2022. They will not be in Minnesota around the upcoming election. They are undertaking actions to clarify that election polling security was not part of the job description. Importantly, while Subject Defendants voluntarily entered into the Assurance, the challenged conduct will not occur, especially in light of the stayed $50,000.00 civil fine the State of Minnesota will impose should the terms of the Assurance be violated.

**B. Plaintiffs Cannot Satisfy the Legal Requirements for Obtaining TRO.**

    **1. Legal Standard for TROs.**

The same legal standard applies to both a request for a temporary restraining order and a request for a preliminary injunction. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989). Temporary restraining orders are extraordinary remedies that are not routinely granted. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (emphasis added); *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 797 (D. Minn. 2010) ("A preliminary injunction is a drastic and

extraordinary remedy that is not to be routinely granted.") (internal quotation marks omitted)); *Medtronic v. Ernst*, 182 F. Supp. 3d 925, 927 (D. Minn. 2016) (Tunheim, C.J.) (denying motion for "the extreme remedy of a TRO").

A temporary restraining order may be granted only if the moving party can demonstrate: (1) the movant will suffer irreparable harm absent the injunction; (2) the balance of harms favors the movant; (3) the movant is likely to succeed on the merits of its underlying claims; and (4) the public interest favors the movant. *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). Because Plaintiff cannot satisfy these elements, the motion must be denied.

The movant bears the "complete burden" of proving all of the *Dataphase* factors. *Gelco Corp.*, 811 F.2d at 418. To obtain the "extraordinary and drastic remedy" of a preliminary injunction, the movant must carry its burden "by a clear showing." *Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*, 761 F. Supp. 2d 848, 856 (D. Minn. 2011); accord *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). When applying the *Dataphase* factors, the Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999).

### 2. Plaintiffs Cannot Satisfy the Requirements for a TRO.

A temporary restraining order may be granted only if the moving party can demonstrate: (1) the movant will suffer irreparable harm absent the injunction; (2) the balance of harms favors the movant; (3) the movant is likely to succeed on the merits of its underlying claims; and (4) the public interest favors the movant. *Dataphase Sys. Inc.*, 640 F.2d at 113.

#### a. Plaintiffs Will Not Suffer Irreparable Harm Absent the Injunction.

To succeed in demonstrating a threat of imminent irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011), citing *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir.1996). A temporary restraining order cannot be granted absent a finding of irreparable harm. *Id*.

Plaintiffs will not suffer irreparable harm absent the requested preliminary relief. Plaintiffs point to impediments on Minnesota voters as the harm they would suffer, but that harm is no longer a possibility. Though Subject Defendants reiterate they had no intention of voter interference, the Assurance already provides the injunctive relief Plaintiffs seek. Subject Defendants are under injunction to not intimidate voters "in Minnesota or elsewhere." This existing prohibition is broader than Plaintiffs' requested relief.

As to the harms Plaintiffs claim Caudle's statements and the job advertisement caused Minnesota voters, the Minnesota Attorney General and Plaintiffs have publically acknowledged their success preventing Subject Defendants from taking any actions that may be viewed as voter intimidation. Here, Subject Defendants are already under an

injunction that requires, "Atlas will not seek to intimidate voters, in Minnesota or elsewhere, in connection with the election." (Moore Dec., Ex. 1, ¶14.) The Assurance also prohibits Subject Defendants from providing "any protective agent services, as defined in Minnesota Statutes section 326.338, in Minnesota from October 22, 2020 through January 1, 2022. (*Id*., ¶13.) This success has been relayed to Minnesota voters in news reports across the state and the country.

Further, in their press release, Plaintiffs affirm that the Assurance signals victory in this lawsuit, stating, "Minnesota voters can rest easy tonight knowing that their polling places will remain free of sinister voter intimidation. We are grateful to the Minnesota Attorney General for negotiating an agreement that prevents the unlawful and threatening occupation of polling locations." (Moore Dec., Ex. 3.) The Assurance provided Plaintiffs the outcome they seek in this lawsuit. Therefore, Plaintiffs will not need to be diverting additional resources as originally claimed and the risk of immediate harm is no more.

Plaintiffs cannot establish their harm is certain, great, and of such imminence that there is a clear and present need for equitable relief, because the risk of irreparable harm to Plaintiffs dissipated with the Assurance.

### b. The Balancing of Harms Weigh in Subject Defendants' Favor.

A preliminary injunction is a drastic and extraordinary remedy not to be routinely granted. When looking at the balance of the harms, the scale weighs in Subject Defendants' favor. Plaintiffs have already received the remedy they seek, which is to enjoin Subject Defendants from taking any action which may intimidate Minnesota voters. Therefore, the

harm suffered by Subject Defendants outweighs Plaintiffs' now non-existent harm. Therefore, this element weighs in Subject Defendants' favor.

### c. Plaintiffs Are Not Likely to Succeed on the Merits of its Claim.

Plaintiffs are not likely to succeed on the merits of its claim, because the Assurance renders Plaintiffs' claim moot. There is no longer an actual controversy to be adjudicated. Federal courts are courts of limited jurisdiction and can only hear actual "cases or controversies" as defined under Article III of the Constitution." *Hickman v. State of Mo.*, 144 F.3d 1141, 1142 (8th Cir. 1998) citing *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). "When a case ... no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it." *Id*. This requirement applies to all stages of the litigation, *id.*, and "applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993).

Plaintiffs' motion for TRO should be denied for mootness, because there is no longer a controversy to be adjudicated. Plaintiffs already received the remedy they seek. Subject Defendants are already enjoined from taking any action that could possibly intimidate or harass Minnesota voters during this upcoming election. Subject Defendants have already agreed to a Court Order that Atlas, as a company, its officers, employees, or contractors will not be present in November. And they will certainly not be acting as "security" at polling places or election sites. Subject Defendants already agreed to be restricted by an injunction to not intimidate voters in Minnesota or elsewhere in connection with the election. (Moore Ex. 1, ¶¶ 9-16.) The Assurance goes beyond what Plaintiffs are

requesting, because it assures Subject Defendants, or anyone affiliated with them, will not be in Minnesota or take actions to intimidate voters in Minnesota or elsewhere.

Plaintiffs' complaints that the public job posting equated to voter intimidation is also remedied by the Assurance. Subject Defendants are under an injunction requiring that they "will not seek to intimidate voters, in Minnesota or elsewhere, in connection with the election." (*Id.*, ¶ 14). Attorney General Ellison publically broadcast Subject Defendants' assurance that they did not intend to impede or intimidate any voters and that Subject Defendants will be taking no action to provide "security" at polling places. Subject Defendants are under injunction to communicate to each listserv, job board, individual, etc. that "Atlas was wrong to suggest the scope of work included 'protection of election polls.'"

**C.  Plaintiffs' Request for Expedited Discovery Should Be Denied.**

Plaintiffs seek identification of ten John Doe Defendants. (Doc. 9.) Setting aside the impropriety of using a moot lawsuit as an investigative tool, Plaintiffs' request should be denied, because: (1) The Minnesota Attorney General has already been provided all of Subject Defendants' knowledge regarding the John Doe Defendants; and (2) Defendants know of no party fitting the John Doe descriptions beyond what is already contained in the Assurance.

The Assurance requires that, "Atlas Aegis shall provide any remaining documents and information it owes the Attorney General pursuant to the CID and subsequent agreements of counsel by October 26." This requirement includes all information regarding identification of the John Doe Defendants. The Attorney General has the information that Plaintiffs seek, and has published this information in the Assurance, naming 5326

Consultants and 10-Code in paragraph four of the Assurance. Plaintiffs already have this information.

Further, Subject Defendants have no knowledge of any party even arguably fitting the description of a John Doe Defendant, except those parties already named in paragraph 4 of the Assurance. (Caudle Dec, ¶ 3). Beyond those two parties, Subject Defendants have no knowledge of who could be John Doe No. 1 ("A private Minnesota Security firm") or John Does Nos. 2-10 (members of "consortium of business owners and concerned citizens"). Subject Defendants do not have knowledge of who these parties are and could not identify them. Therefore, even if Plaintiffs were given leave for expedited discovery as they request, Subject Defendants would have no responsive information.

### III.   CONCLUSION.

Plaintiffs should take solace that they received the remedies in which they seek. Subject Defendants are bound by the Assurance that ceases the challenged conduct at the center of Plaintiffs' complaint and motion for a temporary restraining order. Therefore, Plaintiffs' motion for a temporary restraining order should be denied.

**HELLMUTH & JOHNSON**

Date: October 26, 2020         By: /s/Terrance W. Moore
                                   Terrance W. Moore, #194748
                                   8050 W. 78th St.
                                   Edina, MN 55439
                                   Phone: 952-941-4005
                                   Fax: 952-941-2337
                                   Email: tmoore@hjlawfirm.com

**ATTORNEYS FOR DEFENDANTS
ATLAS AEGIS, LLC AND
ANTHONY CAUDLE**